**OUTTEN & GOLDEN LLP**
Justin M. Swartz
Molly A. Brooks
Melissa E. Pierre-Louis
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  (212) 245-1000

### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH DRAYTON and FLORENCE CELESTIN, individually and on behalf all others similarly situated,<br><br>     Plaintiffs,<br><br>  v.<br><br>METROPLUS HEALTH PLAN, INC. and NEW YORK CITY HEALTH AND HOSPITALS CORPORATION,<br><br>     Defendants. | 10 Civ. 9686 (JSR)(FM) |

### MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

PROCEDURAL HISTORY .................................................................................................... 3

STATEMENT OF FACTS ..................................................................................................... 5

ARGUMENT ....................................................................................................................... 11

    I.    The Court Should Allow Plaintiffs' New York Labor Law Claims Against HHC to
        Proceed ..................................................................................................................... 11

          A.    The Court Should Deny Defendants' Motion to Dismiss Plaintiffs' Claims
                Against HHC ................................................................................................ 11

          B.    The Court Should Deny Defendants' Summary Judgment Motion on Plaintiffs'
                Claims Against HHC ..................................................................................... 14

               1.    HHC is Not a "Municipal Government or Political Subdivision Thereof" As
                        a Matter of Law ............................................................................ 15

               2.    Evidence Already Produced in Discovery Precludes Summary Judgment
                        Regarding HHC's Liability ........................................................... 16

               3.    Defendants' Motion for Summary Judgment Should Be Denied as
                        Premature Because Discovery Has Only Just Begun ................................. 17

               4.    Defendants Ignored Local Rule 56.1 and the Court's Individual Rules of
                        Practice ......................................................................................... 18

    II.    The Court Should Allow Plaintiffs' New York Labor Law Claims Against MetroPlus to
        Proceed ..................................................................................................................... 19

           A.    Defendants Do Not Argue that MetroPlus is Exempt from NYLL Coverage ...... 19

          B.    Plaintiffs Adequately Plead That MetroPlus Employed Them ........................... 20

           C.    The Court Should Exclude All Material Outside the Pleadings .......................... 21

           D.    Evidence Already Produced in Discovery Precludes Summary Judgment
                Regarding MetroPlus' Liability ....................................................................... 22

           E.    Defendants' Motion for Summary Judgment at such an Early Stage of Discovery
                is Premature ................................................................................................... 23

i

F.     Defendants Disregard Local Rule 56.1 and the Court's Individual Rules of
       Practice ............................................................................................................... 24

CONCLUSION ...................................................................................................................... 24

# TABLE OF AUTHORITIES

CASES                                                                                    PAGE(S)

*Aetna Cas. & Surety Co. v. Aniero Concrete Co. Inc.*,
    404 F.3d 566 (2d Cir. 2005)....................................................................................16, 23

*AmBase Corp. v. City Investing Co. Liquidating Trust*,
    326 F.3d 63 (2d Cir. 2003)..............................................................................................11

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................................15

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
    493 F.3d 87 (2d Cir. 2007)..............................................................................................19

*Aviation Dev. Co. v. C&S Acquisition Corp.*,
    No. 97 Civ. 9302 (AJP), 1999 WL 123718 (S.D.N.Y. Mar. 8, 1999) ....................................14

*Barkley v. Olympia Mortg. Co.*,
    No. 04-cv-875 (KAM)(RLM) ..........................................................................................18

*Clinton's Ditch Co-op Co., Inc. v. NLRB*,
    778 F.2d 132 (2d Cir. 1985)............................................................................................20

*DeJesus v. New York City Health & Hospitals Corp.*,
    765 N.Y.S.2d 377 (App. Div. 2003) .................................................................................12

*Executive Photo, Inc. v. Norrell*,
    756 F. Supp. 798 (S.D.N.Y. 1991)..............................................................................12, 21

*Faculty Student Ass'n of State Univ. of Oneonta, Inc. v. Ross*
    ("*Faculty Student Ass'n*"), 54 N.Y.2d 460 (1981)......................................................... passim

*Fowler v. Scores Holding Co., Inc.*,
    677 F. Supp. 2d 673 (S.D.N.Y. 2009)..............................................................................20

*Fowlkes v. Adamec*,
    432 F.3d 90 (2d Cir. 2005)..............................................................................................11

*Gitlow v. U.S.*,
    319 F. Supp. 2d 478 (S.D.N.Y. 2004)..............................................................................18

*Globecon Grp., LLC v. Hartford Fire Ins. Co.*,
    434 F.3d 165 (2d Cir. 2006)............................................................................................15

*Grant v. Citibank (South Dakota), N.A.*,
  No. 10 Civ. 2955(KNF), 2010 WL 5187754 (S.D.N.Y. Dec. 6, 2010) ..................................17

*Hill v. City of New York*,
  658 N.Y.S.2d 172 (Sup. Ct. 1997) ........................................................................................12

*Holtz v. Rockefeller & Co.*,
  258 F.3d 62 (2d Cir.2001) ....................................................................................................18

*John Grace & Co., Inc. v. State Univ. Const. Fund*,
  375 N.E.2d 377 (1978)..........................................................................................................22

*Kasachkoff v. City of New York*,
  485 N.Y.S.2d 992 (App. Div. 1985) ......................................................................................12

*Kopec v. Coughlin*,
  922 F.2d 152 (2d Cir.1991)..............................................................................................12, 21

*Methodist Hosp. of Brooklyn v. State Ins. Fund*,
  479 N.Y.S.2d 11 (App. Div. 1984) ........................................................................................13

*Miller v. Wolpoff & Abramson L.L.P.*,
  321 F.3d 292 (2d Cir. 2003) (Sotomayor, J.)....................................................................16, 23

*Millus v. D'Angelo*,
  224 F.3d 137 (2d Cir.2000)...................................................................................................18

*Monahan v. NYC Dep't of Corrections*,
  214 F.3d 275 (2d Cir. 2000)..................................................................................................18

*NY State Teamsters Conference Pension & Retirement Fund v. Express Services, Inc.*
  426 F.3d 640 (2d Cir. 2005)..................................................................................................18

*People v. Tomassetti*,
  607 N.Y.S.2d 588 (Sup Ct. 1993) ..........................................................................................13

*Schering Corp. v. Home Ins. Co.*,
  712 F.2d 4 (2d Cir. 1983) .....................................................................................................16

*Thomas v. Roach*,
  165 F.3d 137 (2d Cir. 1999)..................................................................................................19

*United States v. Yousef*,
  327 F.3d 56 (2d Cir.2003)......................................................................................................21

*Zheng v. Liberty Apparel Co. Inc.*,
  355 F.3d 61 (2d Cir. 2003)....................................................................................................20

STATUTES

29 U.S.C. § 216(b) ...................................................................................................2

Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA") .....................................2

HHC Act, N.Y. Unconsol. Law § 7381-7406 ...............................................................5

N.Y. Lab. Law §651(5) ...........................................................................................1, 11

N.Y. Unconsol. Law § 7384-a ...............................................................................13, 14

N.Y. Unconsol. Law § 7385 ...................................................................................5, 6, 7

N.Y. Unconsol. Law § 7396 .......................................................................................5

New York Labor Law ("NYLL") ......................................................................... passim

OTHER AUTHORITIES

12 N.Y.C.R.R. §142-2.14 .........................................................................................11

Fed. R. Civ. P. 12 ...................................................................................................16

Fed. R. Civ. P. 23 .....................................................................................................2

Fed. R. Civ. P. 26(a)(1) .............................................................................................4

Fed. R. Civ. P. 30(b)(6).......................................................................................4, 17

Fed. R. Civ. P. 56 ............................................................................................. passim

Local Rule 56.1 ........................................................................................15, 17, 18, 23

## PRELIMINARY STATEMENT

The Court should reject Defendants' attempt to squeeze into a narrow exemption to the New York Labor Law ("NYLL") that does not apply to them. Although the NYLL excludes individuals employed "by federal, state, or municipal government[s]" and "political subdivision[s] thereof," NYLL §651(5)(n), neither Defendant is a "federal, state, or municipal government" or a "political subdivision thereof."

Both Defendants are stand-alone entities. Defendants do not argue that either Defendant is a "federal, state, or municipal government." In fact, Courts have held that HHC is separate from the City of New York (the "City") in many contexts. Both Defendants have their own directors and officers. Each enjoys an existence separate and apart from the City. Each operates and manages its finances independently. Each runs and governs itself. Neither is a City department or a City agency.

Neither Defendant is a "political subdivision," either. As Plaintiffs demonstrate below, contrary to Defendants' claims, Defendants' status as "public benefit corporations" does not make them "political subdivisions."

In fact, the statute that created one Defendant, New York City Health and Hospitals Corporation ("HHC"), specifically enumerates the circumstances under which HHC is to be deemed a "political subdivision" and the NYLL exemption at issue here is not one of them. HHC's own witness does not even believe that HHC is a political subdivision.

Even if the Court finds HHC to be a "political subdivision," it should allow the NYLL claims against the other Defendant, MetroPlus HealthPlan, Inc. ("MetroPlus"), to proceed. Defendants never argue that MetroPlus is a "political subdivision." They simply argue that

MetroPlus did not employ the Plaintiffs, which cannot be determined at this early stage in the case.

Moreover, the evidence demonstrates that MetroPlus is an insurance company, not a "political subdivision." MetroPlus competes in the New York City Medicaid managed care market with private for-profit and not-for-profit insurance companies and is regulated by state insurance law.

Defendants move to dismiss Plaintiffs' NYLL claims under Fed. R. Civ. P. ("Rule") 12(b)(6) and for summary judgment on them under Rule 56.  Defendants fail to identify which procedural mechanism they invoke for which arguments and do not state the relevant legal standards applicable for analyzing them.  They also violate this Court's local rules by failing to file a statement of undisputed facts with their summary judgment motion.

The Court should deny Defendants' motion in its entirety.  To the extent that it is a Rule 12(b)(6) motion, Defendants have not shown that Plaintiffs' complaint fails to state a claim.  To the extent that it is a motion for summary judgment, Defendants have not shown a lack of material factual issues.

## PROCEDURAL HISTORY

Plaintiffs, two MetroPlus Medicaid marketing representatives, filed their class and collective action complaint on December 31, 2010, claiming that Defendants violated the overtime provisions of the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq*. ("FLSA"), and the New York Labor Law, Article 6 §§ 190 et seq. and Article 19, §§ 650 *et seq*. ("NYLL").  (Ex. A, (Class Action Complaint ("Compl.")) ¶ 11.)[1]  They bring their FLSA claims as a collective action under 29 U.S.C. § 216(b) and their NYLL claims as a Fed. R. Civ. P. 23 class action.  (Ex.

---

[1]    As used throughout this brief, "Ex." refers to exhibits attached to the Declaration of Melissa E. Pierre-Louis ("Pierre-Louis Dec.").

A (Compl.) ¶ 3.)  Plaintiffs allege that MetroPlus Health Plan, Inc. ("MetroPlus") and New York

City Health and Hospitals Corporation ("HHC") each employed Plaintiffs and similarly situated

current and former employees.  (Ex. A (Compl.) ¶ 5.)

On January 24, 2011, HHC and MetroPlus ("Defendants") answered the complaint.  (Ex.

B (Answer to Class Action Complaint) ("Answer").)  In their Answer, Defendants asserted as an

affirmative defense that the New York Labor Law, Article 6 §§ 190 *et seq.* and Article 19, §§

650 *et seq.*, ("NYLL") does not apply to either of them.  (Ex. B (Answer) ¶ 96.)

At a February 22, 2011 court conference, the Court granted Defendants' permission to

move to dismiss Plaintiffs' NYLL claims.  (*See* Ex. R (Transcript of February 22, 2011

conference ("Court Tr.")) 5:7-8; 7:16-18.)  On March 7, 2011, Defendants filed this motion to

dismiss or alternatively a motion for summary judgment, which relies heavily on materials

outside the pleadings.  (*See* Ex. C (Defendants' Notice of Motion ("Notice of Motion").)  In

addition to arguing that the NYLL does not apply to them, Defendants appear to claim that

MetroPlus is not Plaintiffs' employer.  (*See* Ex. D (Memorandum of Law in Support of

Defendants' Motion to Dismiss ("Defs. Mot.")) at 7-9).)

On March 9, 2011, the parties' called the court to raise two issues.  Plaintiffs requested

permission to file a cross-motion for further discovery under Fed. R. Civ. P. 56(d).  The Court

denied Plaintiffs' request to file a cross-motion but instructed Plaintiffs to include their

arguments for further discovery in their opposition papers.  (*See* Pierre-Louis Dec. ¶ 12, 14.)

Plaintiffs also requested permission to cross-move for summary judgment.  The Court denied this

request without prejudice.  (*See* Pierre-Louis Dec. ¶¶ 13-14.)  During the call, Defendants told

the Court and Plaintiffs' counsel (and after the call, reiterated to Plaintiffs' counsel) that they do

not seek a ruling as to which entit(ies) employed Plaintiffs.  (*See* Pierre-Louis Dec. ¶ 16.)

The parties have engaged in limited discovery during the past two weeks.  (*See* Pierre-Louis Dec. ¶ 17.)   On February 28, 2011, Plaintiffs served initial disclosures, pursuant to Fed. R. Civ. P. 26(a)(1).  (*See* Pierre-Louis Dec. ¶ 18.)   Defendants served their initial disclosures on March 4, 2011.  (*See* Pierre-Louis Dec. ¶ 19.)  Defendants' initial disclosures identified 12 witnesses, each of whom Plaintiffs intend to depose.  (*See* Pierre-Louis Dec. ¶ 20.)   Plaintiffs served their first set of document requests on March 9, 2011, (*See* Pierre-Louis Dec. ¶ 21), and their first set of interrogatories on March 15, 2011 (*See* Pierre-Louis Dec. ¶ 22.)  On March 14, 2011, Plaintiffs' deposed John Cuda ("Cuda"), MetroPlus' Fed. R. Civ. P. 30(b)(6) witness.  (*See* Pierre-Louis Dec. ¶ 23.)  During Cuda's deposition, Defendants produced some documents but have not yet formally responded to Plaintiffs' first set of document requests or Plaintiffs' first set of interrogatories.  (*See* Pierre-Louis Dec. ¶ 24.)  On March 18, 2011, Plaintiffs' deposed Dr. Van Dunn ("Van Dunn"), HHC's Fed. R. Civ. P. 30(b)(6) witness.  (*See* Pierre-Louis Dec., ¶ 25.)

## STATEMENT OF FACTS

*Plaintiffs*

Plaintiffs are Medicaid managed care marketing representatives who were hired by MetroPlus and worked for MetroPlus in New York City.  (Ex. A (Compl.) ¶¶ 20-22, 26-28.)

Plaintiffs worked long hours, often well into the night after a full day's work, enrolling low-income New Yorkers in MetroPlus' health insurance products, completing paperwork, collecting documents from enrollees, copying documents, and verifying eligibility information.  (Ex. A (Compl.) ¶¶ 23-25, 29-31, 50, 58-59.)  MetroPlus controlled Plaintiffs' work schedules and employment conditions. (Ex. I (MetroPlus Operating Procedure on Tardiness).)  MetroPlus also determined Plaintiffs' compensation. (Ex. F (Letter from R. Harris to F. Celestin regarding

promotion); Ex. G (Letter from R. Harris to F. Celestin rescinding promotion); Ex K (Letter from R. Milliner to F. Celestin re: salary increase).)  MetroPlus failed to pay Plaintiffs and their co-workers for many of the hours they worked outside their scheduled 8-hour shifts. (Ex. A (Compl.) ¶¶ 8, 24, 25, 30, 31, 52.)

*HHC*

HHC is a multi-billion dollar integrated healthcare delivery system.  (*See* Ex. M (Transcript of Dr. Van Dunn, dated March 18, 2011 ("Dunn Tr.")) 51:24-52:6.)  HHC is a public benefit corporation that was established by statute – the HHC Act, N.Y. Unconsol. Law § 7381-7406.  (*See* Defs. Mot. at 6.)  It was created in order to allow it to operate separately from the City of New York (the "City"), "without regulations and rules that might inhibit it from doing business in a more streamlined manner." (Ex. M (Dunn Tr.) 51:9-23.)

HHC is a distinct corporate and legal entity from the City.  (*See* Ex. L (Transcript of John Cuda, dated March 14, 2011) ("Cuda Tr.")) 158:21-22.) It has its own board of directors that includes members who are not City employees.  (Ex. M (Dunn Tr.) 37:3-41:5.)  HHC has a different corporate tax ID than does the City (Ex. L (Cuda Tr.) 195:24-196:5), has its own separate legal counsel (Ex. L (Cuda Tr.) 182:20-22), its own legal department (Ex. M (Dunn Tr.) 52:18-20), its own purchasing department (Ex. M (Dunn Tr.) 53:6-8), and its own planning department (Ex. M (Dunn Tr.) 53:18-20.)  HHC is solely liable for any debt or obligation that it incurs (N.Y. Unconsol. Law § 7396) and can change its own by-laws, rules, and regulations. N.Y. Unconsol. Law § 7385(3).

HHC is not a City department (Ex. L (Cuda Tr.) 158:17-19).  HHC's own witness, Dr. Van Dunn, testified that, in his view, HHC is not a political subdivision of the City. (Ex. M (Dunn Tr.) 74:22.)  The City is not involved with HHC's "day to day operations." (Ex. L (Cuda

Tr.) 177:14-17); (Ex. M (Dunn Tr.) 69:2-6.)  HHC can execute its own contracts, leases, and other agreements.  N.Y. Unconsol. Law § 7385(5).

      HHC also acts separately from the City with respect to its personnel.   HHC has substantial control over hiring and controlling of its employees.  *See* N.Y. Unconsol. Law § 7385(11).  HHC may employ its own officers and employees as it sees fit.  *See* N.Y. Unconsol. Law § 7385(11) (authorizing HHC to employ officers, executives, management personnel).   It also has the power over the terms and conditions of the employment of its personnel.  *See* N.Y. Unconsol. Law § 7385 (12) (authorizing HHC to "promulgate rules and regulations relating to the creation of classes of positions, position classifications, title structure, class specifications, examinations, appointments, promotions, voluntary demotions, transfers, re-instatement, procedures relating to abolition or reduction in positions, to determine the number of and to appoint, remove and discipline employees, to prescribe their duties, fix their qualifications, salaries, wages, fringe benefits, hours, work schedules, assignments and re-assignments, leaves of absence, annual leave, other time and leave rules and other terms of employment"); (Ex. M (Dunn Tr.) 69:15-20.)  HHC has its own Human Resources department, hires its own employees (Ex. M (Dunn Tr.) 57:19-58:9), and disciplines its own employees. (Ex. M (Dunn Tr.) 62:2-7; 69:21-25.)

      HHC's manages its finances separately from the City.  HHC manages its own budget, which is funded by revenue that is generated from patient services.  (Ex. M (Dunn Tr.) 48:18-49:5.)  It is independently authorized to apply for and accept "grants of money, property, services…or other aid . . . for use . . . in carrying out its corporate purpose and in the exercise of its powers."  N.Y. Unconsol. Law § 7385(15).  HHC has discretion as to investing its reserves.  N.Y. Unconsol. Law § 7385 (16); (Ex. M (Dunn Tr.) 69:7-10).  It has discretion to obtain

independent insurance "in connection with the activities of the corporation," as it "deems appropriate."  N.Y. Unconsol. Law § 7385(17).

*MetroPlus*

MetroPlus is the second-largest health insurance company in the New York City Medicaid managed care market, insuring more than 400,000 individuals.  (Ex. L (Cuda Tr.) 110:5-17.)  It competes with private for-profit and not-for-profit companies to enroll low-income New Yorkers in its health insurance products, (Ex. L (Cuda Tr.) 103:17-104:13), including Affinity Health Plan, Inc., Amerigroup Community Care, NYS Catholic Health Plan, Inc. d/b/a Fidelis Care New York, Health Insurance Plan of Greater New York, HealthFirst PHSP, Inc., Health Plus PHSP, Inc., UnitedHealthcare Community Plan, WellCare of New York, Inc., and Empire Blue Cross/Blue Sheild.  (Ex. L (Cuda Tr.) 270:11-17); Ex. N (July 2007 Blue List); Ex. O (January 2011 Blue List).  MetroPlus' primary competitors are Fidelis Care New York, HealthFirst PHSP, Inc., and Health Plus PHSP, Inc. because they have "similar areas [they] compete in."  (Ex. L (Cuda Tr.) 77:16-77:25.)  A Medicaid-eligible individual could be assigned to any of these competitors.  (Ex. L (Cuda Tr.) 75:18-77:9.)  The market for Medicaid managed care has been competitive since the late 1990's.  (Ex. L (Cuda Tr.) 92:10-94:18.)  During the past five years, the private for-profit insurance companies have increased their presence in the market. (Ex. L (Cuda Tr.) 103:2-4.)  Like its competitors, MetroPlus is governed by the same city and state marketing guidelines, which require it to provide customers with information about all competitors, (Ex. L (Cuda Tr.) 79:9-19; 269:7-270:5.), and is regulated by the Department of Insurance.  (Ex. L (Cuda Tr.) 110:25-111:24.)

As an insurance company governed by state law, like all of its competitors, MetroPlus is required to make money and maintain adequate reserves.  (Ex. L (Cuda Tr.) 84:7-88:25.)  To this

end, MetroPlus advertises in hospitals, in local newspapers, ethnic newspapers, and occasionally on the radio in order to increase enrollment.  (Ex. L (Cuda Tr.) 84:7-88:25.)  The more people MetroPlus enrolls, the more likely it is to make money.  (Ex. L (Cuda Tr.) 89:16-24; 109:12-110:17.)

Although HHC owns MetroPlus, (Ex. L (Cuda Tr.) 39:6-8), MetroPlus is incorporated separately from HHC as a public benefits corporation, (Ex. L (Cuda Tr.) 110:25-111:6); (Ex. M (Dunn Tr.) 70:13-16, with its own board of directors (Ex. M (Dunn Tr.) 13:3-10.)  Its board of directors is primarily responsible for the management, control and supervision of the MetroPlus corporation.  (Ex. A to Defs. Mot. (Certificate of Incorporation of Metro Plus Health Plan, Inc.) ¶ 6); (Ex. B to Defs. Mot. (Bylaws of Metroplus Health Plan, Inc.) at 5.); (Ex. L (Cuda Tr.) 277:3-14.)

MetroPlus and HHC are "in two different kinds of business, one provides the care and one provides the access to insurance for the care."  (Ex. L (Cuda Tr.) 113:6-8); (Ex. M (Dunn Tr.) 17:5-6.)  MetroPlus operates under an Article 44 license (Ex. L (Cuda Tr.) 111:8-10); (Ex. M (Dunn Tr.) 13:23-14:3), while HHC operates under an Article 28 license.  (Ex. L (Cuda Tr.) 111:18-20; (Ex. M (Dunn Tr.) 15:2-4.)

MetroPlus' financial affairs are separate from HHC's.  MetroPlus has its own bank accounts, separate from HHC's bank accounts. (Ex. L (Cuda Tr.) 282:16-22); Ex. M (Dunn Tr.) 70:17-20.)  This separate financial structure is intended to ensure that MetroPlus does not co-mingle funds with HHC.  (Ex. L (Cuda Tr.) 111:16-24); Ex. M (Dunn Tr.) 85:22-25) ("They wanted to see a clear separation that the dollars were going to MetroPlus and the dollars were not going directly to HHC.").  MetroPlus' board of directors can deposit funds in New York trusts and banks as it sees fit. (*See* Ex. B to Defs. Mot. (Bylaws of Metroplus Health Plan, Inc.) at 19.)

8

MetroPlus is solely responsible for "adopt[ing] [] MetroPlus' budgets. . . ."  (Ex. C to Defendant's Motion (Management Services Agreement) at 2.)  MetroPlus' annual audits are independent of HHC.  (Ex. B to Defendants' Motion (Bylaws of Metroplus Health Plan, Inc.) at 23.); (Ex. L (Cuda Tr.) 111:16-24.)  MetroPlus executes its own "contracts, mortgages, bonds…and other documents for and in the name of the Corporation," and there are no provisions making it subject to approval by either HHC or the City of New York.  (Ex. B to Defendants' Motion (Bylaws of Metroplus Health Plan, Inc.) at 19.)

MetroPlus has primary responsibility for its own general business affairs, (Ex. M (Dunn Tr.) 70:21-71:2), including managing its own property, (Ex. B to Defendants' Motion (Bylaws of Metroplus Health Plan, Inc.) at 5.), and has "responsibility for the general management, control and supervision of the [its] affairs, business, activities and assets . . . ."  (Ex. A to Defs. Mot. (MetroPlus Certificate of Incorporation) § "Sixth.")

MetroPlus is responsible for its own day to day operations.  (Ex. L (Cuda Tr.) 137:22-138:2.)  It has "the authority and responsibility for overseeing [its] policies, management and overall operations…."  (Ex. C to Defendants' Motion (Management Services Agreement) at 2.)  Critically, MetroPlus is independently responsible for ensuring that it operates in accordance with all applicable federal, state and local laws, rules and regulations.  (Ex. C to Defendants' Motion (Management Services Agreement) at 2.)

MetroPlus has its own employees.  Although it outsources some payroll and human resources functions to HHC under a "Management Services Agreement,"[2] MetroPlus acts independently of HHC with respect to its personnel decisions.  (*See* Exhibit B to Defs. Mot. (Management Services Agreement).)  It has its own employee handbook that it provides to each

---

[2]     Some of MetroPlus' competitors also appear to have arrangements with separate entities for providing administrative services.  (Ex. L (Cuda Tr.) 114:19-116:14.)

new hire.  (Exhibit D to Defs. Mot. (MetroPlus Employee Handbook) at 12); (Ex L (Cuda

Tr.)126:10-127:19); (Ex. M (Dunn Tr.) 72:2-18.)  MetroPlus also has its own Human Resources

Department.  (*See* Defs. Mot. Ex. D.)  It has the right to discipline its own employees (Ex. L

(Cuda Tr.) 137:6-10); (Ex. M (Dunn Tr.) 73:24-74:2) and to fire them (Ex. L (Cuda Tr.) 134:7-

18); (Ex. J (Letter from B. Barneys to F. Celestin re Termination) at 4.)

The documents MetroPlus has produced so far make numerous references to MetroPlus

"employees."  (Ex. C to Defendants' Motion (Management Services Agreement) at 8.)

("MetroPlus shall defend, indemnify and hold harmless HHC from and against any liability or

claim resulting from the negligent or wrongful acts or omissions of MetroPlus or its agents,

servants, contractors or employees."); (Ex. D to Defendants' Motion (MetroPlus Health Plan

Employee Handbook) at 14.) ("The employees of MetroPlus make the company what it is.").

MetroPlus issues its own identification cards to its employees, who must pay a replacement fee

to MetroPlus Health Plan if they are lost.  (*See id.* at 28.)  MetroPlus' Fed. R. 30(b)(6) witness

referred to himself and others as MetroPlus employees.  (Ex. L (Cuda Tr. 127:7-9; 135:7-

136:11).)

## ARGUMENT

**I.**     **The Court Should Allow Plaintiffs' New York Labor Law Claims Against HHC to Proceed.**

**A.**     **The Court Should Deny Defendants' Motion to Dismiss Plaintiffs' Claims Against HHC.**

The Court should deny Defendants' motion to dismiss Plaintiffs' NYLL claims against

HHC.  Although moving pursuant to Fed. R. Civ. P. 12(b)(6), Defendants do not challenge the

adequacy of Plaintiffs' complaint  – they simply claim that HHC is an exempt "political

subdivision" as a matter of law.  (Defs. Mot. at 8.)

10

The NYLL protects individuals who are "employees." *See* N.Y. Lab. Law §651(5); 12 N.Y.C.R.R. §142-2.14. The definition of "employee" excludes individuals employed "by . . . federal, state, or municipal government[s] or [] political subdivision[s] thereof." N.Y. Lab. Law § 651 (5)(n). The statute does not define "political subdivision." Nor does the only case that interprets this exclusion from NYLL coverage. *Faculty Student Ass'n of State Univ. of Oneonta, Inc. v. Ross* ("*Faculty Student Ass'n*"), 54 N.Y.2d 460, 463-64 (1981) (holding that a student organization at a public college is not exempt from the NYLL even if the student organization were "a mere appendage" of the college).

Whether an employee is an employee of a "federal, state, or municipal government or a political subdivision thereof," is a fact-intensive inquiry. It is based on the particularized "nature of the employing organization." *Id*. at 463-64.

In deciding a Rule 12(b)(6) motion, the Court must take Plaintiffs' factual allegations as true and draw all reasonable inferences in Plaintiffs' favor. *See Fowlkes v. Adamec,* 432 F.3d 90, 95 (2d Cir. 2005) (citation omitted). The Court should only "assess the legal feasibility of the complaint," not weigh the evidence. *AmBase Corp. v. City Investing Co. Liquidating Trust*, 326 F.3d 63, 72 (2d Cir. 2003) (internal quotation marks omitted). In ruling on Defendants' motion to dismiss, the Court should limit its consideration to the facts alleged in Plaintiffs' complaint *See Kopec v. Coughlin,* 922 F.2d 152, 155 (2d Cir.1991); *Exec. Photo, Inc. v. Norrell*, 756 F. Supp. 798, 800 (S.D.N.Y. 1991).

Defendants submit voluminous materials outside the pleadings. In ruling on Defendants' Rule 12(b)(6) motion, the Court should ignore all of these materials and consider only the Plaintiffs' complaint. *Id.* Because nothing within the four corners of the complaint demonstrates

that HHC is a "federal, state, or municipal government or a political subdivision thereof," the Court should deny Defendants' motion to dismiss.

Nothing in Plaintiffs' complaint supports the conclusion that HHC is a "municipality." In fact, it is not. In many contexts, courts have held that HHC is independent of the City of New York. For example, in *Brennan v. City of New York,* the New York Court of Appeals held:

> The New York City Health and Hospitals Corporation (NYCHHC) is a public benefit corporation, independent of the City of New York. . . for purposes *other* than representation and indemnification NYCHHC is *not* an agency of the city.

59 N.Y.2d 791, 792 (1983) (emphasis in original). *See also DeJesus v. New York City Health & Hospitals Corp.*, 765 N.Y.S.2d 377, 379 (App. Div. 2003) ("Although the Supreme Court noted on renewal that the agreement requires the City to provide funding for the HHC, this does not change the HHC's status as a public benefit corporation independent of the City of New York"); *Kasachkoff v. City of New York*, 485 N.Y.S.2d 992, 994-95 (App. Div. 1985) ("New York City is not a proper party to this action. The events giving rise to plaintiff's claims arose out of her employment at Bellevue, a Health and Hospitals Corporation hospital, which is an entity wholly separate from the City"); *Hill v. City of New York*, 658 N.Y.S.2d 172, 172 (Sup. Ct. 1997) ("The HHC is a public benefit corporation independent of the City of New York") (internal quotation marks omitted).

Likewise, nothing in Plaintiffs' complaint supports the conclusion that HHC is "a political subdivision." Defendants are wrong that because HHC is a "public benefits corporation," it is "a political subdivision" as a matter of law. (*See* Defs. Mot. at 8.) Public benefits corporations are not "political subdivisions." *See Long Island R. Co. v. Long Island Lighting Co.* (*LILCO*), 479 N.Y.S.2d 355, 359-61 (App. Div. 1984) ("[W]e begin our inquiry, then, with the proposition that public benefit corporations…created by the State for the general purpose of performing functions essentially governmental in nature, are not identical to the State

or any of its agencies…." (internal quotation marks omitted)), *aff'd.*, 64 N.Y.2d 1088 (1985); *Methodist Hosp. of Brooklyn v. State Ins. Fund*, 479 N.Y.S.2d 11, 18 (App. Div. 1984) ("Public benefit corporations are not political subdivisions of the State."); *People v. Tomassetti*, 607 N.Y.S.2d 588, 589 (Sup Ct. 1993) ("[T]he Court of Appeals has treated public benefit corporations as separate entities from the State, not political subdivisions of the State.").

Moreover, the legislature did not intend for HHC to be treated as political subdivision for NYLL purposes.  The legislature was explicit about the purposes for which it intended HHC to be treated as a political subdivision.  *See* N.Y. Unconsol. Law § 7384-a ("For the purposes of sections one hundred seventy-five (a) and one hundred seventy-five (b) of the state finance law, the corporation shall be deemed to be a political subdivision").

Any further analysis requires a factual inquiry.  The NYLL exemption at issue here is "based on the nature of the employing organization," and not on labels.  *Faculty Student Ass'n*, 54 N.Y.2d at 464.

Defendants' cases are inapposite.  In *Muhlrad v. Mitchell*, the issue of whether HHC was a "political subdivision" was not in dispute.  No. 96 Civ. 3568 (DLC), 1997 WL 182614, at *3-4 (S.D.N.Y. April 14, 1997).  In *Szucs v. Comm. of Interns & Residents*, there is no discussion of HHC's status as a political subdivision.  34 F. Supp. 2d 224 (S.D.N.Y. 1999).  Moreover, in *Muhlrad*, the court did not find that HHC is a "public employer," as Defendants claim.  It merely stated that HHC was a "public corporation."  *Id.*

### B.     The Court Should Deny Defendants' Summary Judgment Motion on Plaintiffs' Claims Against HHC.

The Court should deny Defendants motion for summary judgment for several reasons.  First, HHC is not a "municipal government" or a "political subdivision thereof" as a matter of law.  Second, Defendants have not met their burden to show that there are no material issues of

fact.  Third, a motion for summary judgment is premature because discovery has only just begun.

Finally, Defendants ignore the requirements of Local Civil Rule 56.1, which, in this Court, is

"strictly enforced."  *See* Individual Rules of Practice, Hon. Jed. S. Rakoff at ¶ 2(e).

### 1.    HHC is Not a "Municipal Government or Political Subdivision Thereof" As a Matter of Law.

As Plaintiffs explain Section I, *supra*, HHC is not a "municipal government" or a

"political subdivision thereof."  It is not a "municipal government" because it is separate from

New York City.  (Ex. L (Cuda Tr.) 153:5-11).  It is not a "political subdivision thereof" because

the statute that created it deems it a "political subdivision" for only one specific enumerated

purpose - sections one hundred seventy-five (a) and one hundred seventy-five (b)[2] of the state

finance law.  *See* N.Y. Unconsol. Law § 7384-a.  Accordingly, the Court should grant summary

judgment in Plaintiffs' favor.[3]  *See Aviation Dev. Co. v. C&S Acquisition Corp.*, No. 97 Civ.

9302 (AJP), 1999 WL 123718, at *2-3 (S.D.N.Y. Mar. 8, 1999) (court may grant summary

judgment *sua sponte* to a non-moving plaintiff where defendant is on notice of the specific issue

before the court and is not prejudiced by the decision).

Defendants' primary argument, that the NYLL does not apply to HHC because HHC is

"a public benefit corporation created pursuant to state law, and thus a political subdivision of the

State of New York, and therefore a public employer," (Defs.' Br. at 8), is wrong.  Public benefits

corporations are not "municipal governments" or "political subdivisions."  *See* Section I.A,

*supra*.

---

[3]     At the parties' joint telephone conference on March 9, 2011, Plaintiffs asked the court for permission to cross-move for summary judgment.  The court denied Plaintiffs' request without prejudice.

## 2.  Evidence Already Produced in Discovery Precludes Summary Judgment Regarding HHC's Liability.

After only limited discovery, the evidence already precludes summary judgment.  Even on this small record, Defendants cannot demonstrate the lack of a "genuine issue of material fact," *Globecon Grp., LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006), as to whether HHC is a "municipal government" or a "political subdivision thereof."  If the Court draws all inferences in Plaintiffs' favor, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), it cannot find that HHC is exempt.

Defendants are also wrong to the extent that they argue that HHC's association with the City exempts it from NYLL coverage.  An entity is not a "political subdivision" simply because it is linked to a government-run entity.  *See Faculty Student Ass'n*, 54 N.Y.2d at 462 ("[I]t matters not…that petitioner might be considered a 'mere appendage' of the college; since it is not the State government or a political subdivision thereof, its employees do not come within the exception, and therefore are entitled to the minimum wage.").  *See also* Section I.A., *supra*.

A reasonable jury could find that HHC enjoys an existence separate and apart from the City.  *See* Section I.A, *supra*.  HHC is a distinct entity from the City that runs and governs itself.  (Plaintiffs' Counter-Statement of Material Facts in Dispute Pursuant to Local Rule 56.1(b) ("Counter-Statement") ¶¶ 5-18.)  HHC is not a City department, a City agency, or a political subdivision of the City.  (Counter-Statement ¶¶ 7-8.)  HHC acts separately from the City with respect to its personnel.  (Counter-Statement ¶¶ 14-16.)  HHC's manages its finances separately from the City.  (Counter-Statement ¶¶ 17, 18.)

### 3.    Defendants' Motion for Summary Judgment Should Be Denied as Premature Because Discovery Has Only Just Begun.

If the Court decides that the evidence Plaintiffs present is not sufficient to preclude summary judgment, it should allow Plaintiffs to take further discovery regarding the "nature" of HHC and its relationship with the City.  Fed. R. Civ. P. Rule 56(d) (formerly Fed. R. Civ. P. 56(f)) allows courts to deny premature summary judgment motions and allow parties time to engage in necessary discovery.  Where summary judgment motions are filed early in litigation, courts freely grant such applications.  *See Schering Corp. v. Home Ins. Co.*, 712 F.2d 4, 10 (2d Cir. 1983) ("[S]ummary judgment should not be granted while the party opposing judgment timely seeks discovery of potentially favorable information.").[4]  Only in the "rarest of cases" should summary judgment be granted against a plaintiff who has not had a full opportunity to conduct discovery.  *Miller v. Wolpoff & Abramson L.L.P.*, 321 F.3d 292, 303–04 (2d Cir. 2003) (Sotomayor, J.).

Here, discovery is in its very early stages.  The initial discovery order was entered on February 22, 2011. (Ex. P (Scheduling Order).)   On March 9, 2011, only two days after receiving Defendants' motion, Plaintiffs served document requests and deposition notices. (Pierre-Louis Decl. ¶ 21.)  Although Defendants have produced some documents, they have not responded to Plaintiffs document requests or made a full document production.  Plaintiffs also plan to serve additional document requests for categories of documents they learned about during depositions and from other documents Defendants produced.  (Pierre-Louis Decl. ¶ 26.) Although Plaintiffs have deposed two Fed. R. Civ. P. 30(b)(6) witnesses, they intend to notice

---

[4]    Plaintiffs are also entitled to additional discovery under Fed. R. Civ. P. 12(d).  When a party moving under Fed. R. Civ. P. 12 presents material outside the pleadings, and the court converts the motion to a summary judgment motion, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).

other depositions, including of other witnesses Defendants listed in their initial disclosures.

Discovery is not scheduled to close until June 30, 2011.  (Ex. P (Scheduling Order).)

    **4.**    **Defendants Ignored Local Rule 56.1 and the Court's Individual Rules of Practice.**

The Court should deny Defendants' summary judgment motion on the independent ground that Defendants did not submit a statement of undisputed facts with their summary judgment motion.  Rule 56.1(a) of the Local Rules for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party filing a "motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure . . . to annex[] to the notice of motion a separate, short and concise statement, in numbered paragraphs, of the material facts as to which the moving party contends there is no genuine issue to be tried."  Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, but did not submit a Local Rule 56.1 statement.  (*See* Ex. C (Defendants' Notice of Motion).)

Local Rule 56.1 gives the Court discretion to deny Defendants' motion on this ground alone.  S.D.N.Y. Local Rule 56.1(a) ("[f]ailure to submit such a statement may constitute grounds for denial of the motion.")  District courts have denied summary judgment motions based on violations of Local Rule 56.1.  *See e.g.*, *Grant v. Citibank (South Dakota), N.A.*, No. 10 Civ. 2955(KNF), 2010 WL 5187754, at *5-6 (S.D.N.Y. Dec. 6, 2010) (summary judgment denied for failure to adhere to requirements of Rule 56.1); *Barkley v. Olympia Mortg. Co.*, No. 04-cv-875 (KAM)(RLM); 2010 WL 3709278, at *14 (E.D.N.Y. Sept. 13, 2010) (summary judgment denied due to movants' failure to file Rule 56.1 statement); *Gitlow v. U.S.*, 319 F. Supp. 2d 478, 481 (S.D.N.Y. 2004) (affidavit that did not comply with Rule 56.1 not considered).  The Second Circuit has affirmed such rulings.  *See e.g.*, *Millus v. D'Angelo,* 224 F.3d 137, 138 (2d Cir.2000).

The Court should exercise its discretion to deny Defendants motion because Rule 56.1 serves an important purpose.  "Rules governing summary judgment practice are essential tools for district courts, permitting them to efficiently decide summary judgment motions by relieving them of the onerous task of 'hunt[ing] through voluminous records without guidance from the parties.'" *NY State Teamsters Conference Pension & Retirement Fund v. Express Services, Inc*. 426 F.3d 640, 648-49 (2d Cir. 2005) (citing *Holtz v. Rockefeller & Co.*, 258 F.3d 62, 74 (2d Cir.2001)).  "The purpose of Local Rule 56.1 is to streamline the consideration of summary judgment motions by freeing district courts from the need to hunt through voluminous records without guidance from the parties." *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 74 (2d Cir. 2001).  "Local Rule 56.1 is designed to place the responsibility on the parties to clarify the elements of the substantive law which remain at issue because they turn on contested facts." *Monahan v. NYC Dep't of Corrections*, 214 F.3d 275, 292 (2d Cir. 2000).

Defendants should not be given an opportunity to cure their mistake.  This Court's individual rules gave Defendants fair warning.  See Individual Rules of Practice, Hon. Jed. S. Rakoff at ¶ 2(e) ("<u>With respect to motions for summary judgment, Local Civil Rule 56.1 will be strictly enforced.</u>") (emphasis in original).

## II.     The Court Should Allow Plaintiffs' New York Labor Law Claims Against MetroPlus to Proceed.

### A.     Defendants Do Not Argue that MetroPlus is Exempt from NYLL Coverage.

The Court should allow Plaintiffs' NYLL claims against MetroPlus to proceed even if it finds that HHC is a "municipal government" or a "political subdivision thereof."  Defendants do not argue that MetroPlus is a "municipal government" or a "political subdivision thereof," or even that the NYLL exemption covers employees of MetroPlus.  The court should find that

Defendants have waived this argument and should not be allowed to raise it in their reply brief. *See Thomas v. Roach*, 165 F.3d 137, 145-46 (2d Cir. 1999) (declining to consider plaintiffs new theory of liability against the City because he raised it for the first time in his reply brief).

Moreover, nothing within the four corners of Plaintiffs' complaint supports the conclusion that MetroPlus is a "municipal government" or a "political subdivision thereof." Plaintiffs plead no facts from which the Court can determine "the nature" of MetroPlus.

### B.    Plaintiffs Adequately Plead That MetroPlus Employed Them.

If Defendants are moving to dismiss Plaintiffs' claim that MetroPlus employed Plaintiffs (which is unclear from Defendants' papers – they never argue that Plaintiffs' complaint is deficient in any way), their motion should be denied.  To survive a 12(b)(6) motion to dismiss, plaintiffs must only "provide the grounds upon which [their] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  Plaintiffs here plead much more.

Plaintiffs' clearly allege that MetroPlus was their direct employer:  In paragraph 3 of Plaintiffs' complaint, Plaintiffs allege, "MetroPlus and HHC (collectively "Defendants" or "MetroPlus") deploy Plaintiffs . . ." (Ex. A (Compl.) ¶ 3.)  In paragraph 6, Plaintiffs allege that "MetroPlus requires Marketing Representatives to work long hours, often well into the night after a full day's work . . ." (Ex. A (Compl.) ¶ 6.)   Paragraph 8 alleges Plaintiffs further allege that "[i]t is MetroPlus' policy to deprive its Marketing Representatives, including Plaintiffs, of overtime wages . . . . " (Ex. A (Compl.) ¶ 8.)  Paragraph 10 alleges, "By the conduct described in this Complaint, MetroPlus willfully violated the Fair Labor Standards Act and the New York Labor Law by failing to pay its employees. . . ."  (Ex. A (Compl.) ¶ 10.)  In paragraph 11,

Plaintiffs allege, "Plaintiffs seek to recover unpaid wages that MetroPlus owes them . . . ." (Ex. A (Compl.) ¶ 11.)  Paragraph 21 alleges that "Drayton was employed by MetroPlus in New York as a Marketing Representative . . . ."  (Ex. A (Compl.) ¶ 21.)  In paragraph 22, Plaintiffs allege, "During his employment with MetroPlus, Drayton worked in Manhattan . . . ."  (Ex. A (Compl.) ¶ 22.)  Paragraph 24 alleges that "[p]ursuant to MetroPlus' policy and pattern or practice, Drayton regularly performed work for MetroPlus' benefit without compensation.  MetroPlus did not pay Drayton for time he spent performing compensable work . . . ."  (Ex. A (Compl.) ¶ 24.)[5]

Defendants seem to argue that because Plaintiffs allege that HHC is also their employer, (*see e.g.,* Defs. Mot. at 9) ("Plaintiffs know that HHC is the 'employing organization'"), MetroPlus cannot be.  This is wrong.  Workers can have more than one "employer" under the NYLL.  *See Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 66 (2d Cir. 2003).

### C.      The Court Should Exclude All Material Outside the Pleadings.

In support of their argument that MetroPlus did not employ Plaintiffs, Defendants submit voluminous materials outside the pleadings.  In ruling on Defendants' Rule 12(b)(6) motion, the Court should ignore all of this material.  *See Kopec v. Coughlin*, 922 F.2d 152, 155 (2d Cir.1991); *Executive Photo, Inc. v. Norrell*, 756 F. Supp. 798, 800 (S.D.N.Y. 1991).[6]

---

[5]      The question of joint employment is generally inappropriate for a motion to dismiss. *See Clinton's Ditch Co-op Co., Inc. v. NLRB*, 778 F.2d 132, 136 (2d Cir. 1985) (whether company was joint employer "'is essentially a factual issue'") (citing *Boire v. Greyhound Corp.*, 376 U.S. 473, 481 (1964)); *Fowler v. Scores Holding Co., Inc*., 677 F. Supp. 2d 673, 681 (S.D.N.Y. 2009) ("the determination of whether Scores Holding was Fowler's employer is a question of fact that cannot be decided on a motion to dismiss").

[6]      Defendants represented to the Court on a telephone conference and then again in subsequent conversations with counsel that they do not move for summary judgment that MetroPlus is not Plaintiffs' employer.  (*See* Pierre-Louis Dec. ¶ 16.)

**D.      Evidence Already Produced in Discovery Precludes Summary
         Judgment Regarding MetroPlus' Liability.**

Defendants do not argue that MetroPlus is a "municipal government" or a "political

subdivision thereof," or that the NYLL exemption covers MetroPlus.  Therefore, this argument is

waived.  *See United States v. Yousef,* 327 F.3d 56, 115 (2d Cir.2003).

If Defendants had argued that MetroPlus is a "municipal government" or a "political

subdivision thereof, the evidence Plaintiffs have gathered so far would prove them wrong.  First,

although Defendants claim that MetroPlus is a "wholly owned subsidiary public benefit

corporation" of HHC (*see* Defs. Mot. at 6-7) as Plaintiffs explain in section II, *supra,* public

benefits corporations are not "municipal governments" or "political subdivisions."  Moreover,

MetroPlus' association with HHC (which Defendants allege is exempt), does not remove it from

NYLL coverage.  *See Faculty Student Ass'n*, 430 N.E.2d at 1260 ("[I]t matters not . . . that

petitioner might be considered a 'mere appendage' of the college; since it is not the State

government or a political subdivision thereof, its employees do not come within the exception,

and therefore are entitled to the minimum wage.").

Rather, as discussed above, in determining whether an organization acts independently

from the government, courts analyze, among other factors, whether the "powers, functions and

obligations" of the agency are "identical with the State."  *See John Grace & Co., Inc. v. State*

*Univ. Const. Fund*, 375 N.E.2d 377, 379 (1978).   As with HHC, there is an obvious issue of fact

as to whether MetroPlus enjoys an existence separate and apart from the state as well as HHC.

MetroPlus and HHC are "in two different kinds of business, one provides the care and one

provides the access to insurance for the care."  MetroPlus and HHC are "in two different kinds of

business, one provides the care and one provides the access to insurance for the care."  (Ex. L

(Cuda Tr.) 113:6-8; Ex. M (Dunn Tr.) 17:5-6).  MetroPlus, unlike HHC, competes in the New

York City Medicaid managed care market with private for-profit and not-for-profit companies. (Counter-Statement ¶¶ 20-21.)  Unlike HHC, MetroPlus is an insurance company governed by state insurance law.  (Counter-Statement ¶ 19.)  MetroPlus is incorporated separately from HHC, and operates separately.  (Counter-Statement ¶¶ 23-25.)  MetroPlus's financial affairs are separate from HHC's.  (Counter-Statement ¶¶ 25-32.)  MetroPlus has primary responsibility for its own general business affairs.  (Ex. M (Dunn Tr.) 70:21-71:2), including managing its own property (*see* Defs. Mot. Ex. B, at art. 5), and has "responsibility for the general management, control and supervision of the [its] affairs, business, activities and assets . . . ."  (Exhibit A to Defs. Mot. (MetroPlus Certificate of Incorporation, § "Sixth".)  MetroPlus has its own employees and employment policies.  (Counter-Statement ¶¶ 46-49.)

> ### E.    Defendants' Motion for Summary Judgment at such an Early Stage of Discovery is Premature.

If the Court decides that the evidence Plaintiffs present is not sufficient to preclude summary judgment, it should allow Plaintiffs to take further discovery regarding the "nature" of MetroPlus."[7]  As argued in Section II.C., *supra,* courts rarely grant summary judgment before meaningful discovery.  *See Miller v. Wolpoff & Abramson L.L.P.*, 321 F.3d 292, 303–04 (2d Cir. 2003) (Sotomayor, J.).

As with Defendants' motion against HHC, if the Court does not deny Defendants' motion on the existing record, Plaintiffs seek additional discovery regarding MetroPlus under Fed. R. Civ. P. Rule 56(d).  (*See* Pierre-Louis Dec. ¶ 15.)

---

[7]    On March 9, 2011, the Court denied Plaintiffs' request to make a formal cross-motion under Rule 56(d) and instructed Plaintiffs to include their Rule 56(d) application in their opposition papers.

**F.     Defendants Disregarded Local Rule 56.1 and the Court's Individual Rules of Practice.**

The Court should deny Defendants' summary judgment motion regarding MetroPlus' NYLL liability (if it makes one) because Defendants did not comply with Local Rule 56.1, as explained in Section II.C., *supra*.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court (1) deny Defendants' Motion to Dismiss or in the Alternative for Summary Judgment or (2) grant Plaintiff's Cross-Motion for Discovery.

Dated: March 21, 2011

/s/ Justin M. Swartz

Justin M. Swartz
Molly A. Brooks
Melissa E. Pierre-Louis
**Outten & Golden LLP**
3 Park Avenue, 29th Floor
New York, New York 10016
Telephone:  212-245-1000
**Attorneys for Plaintiffs and the Putative Class**